UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE LUIS RIVAS GARCIA (A# 204-734-331),<br><br>　　　　　Petitioner,<br><br>　　v.<br><br>CURRENT OR ACTING FIELD DIRECTOR, et al.,<br><br>　　　　　Respondents. | No.  1:26-cv-03245 DAD SCR<br><br><br>FINDINGS & RECOMMENDATIONS |

Petitioner is a federal immigration detainee who filed this habeas corpus action pursuant to 28 U.S.C. § 2241.  The matter was referred to the undersigned by operation of 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.

**I.　　Factual and Procedural History**

Petitioner is a citizen and national of Mexico who entered the United States without inspection on an unknown date and time.[1]  Declaration of Deportation Officer J. Abad ¶¶ 1-2, ECF No. 10-1 at 2 ("Abad Decl.").  Petitioner has a criminal history that includes January 2024 convictions for Carrying a Concealed Weapon, Cal. Penal Code § 25400(A)(2), and Reckless Driving, Cal. Veh. Code § 23103.5, for which he was sentenced to 90 days in jail.  ECF No. 10-1 at 15-16.  Petitioner was rearrested by local law enforcement on July 19, 2025, for Failure to

---

[1]  Petitioner's immigration history includes five voluntary returns to Mexico in July 2000 and a denied application for Provisional Unlawful Presence Waiver in April 2014.  ECF No. 10-1 at 6.

1

Appear in violation of California Penal Code § 1320(a).  Id. at 16-17.  Immigration and Customs Enforcement ("ICE") agents arrested petitioner on September 1, 2025, upon his release from Solano County Jail and administratively charged him under 8 U.S.C. § 1182(a)(6)(A)(i) (present without admission or parole).  ECF No. 10-1 at 6, 23.  Petitioner remains detained at the Mesa Verde Detention Center, within this judicial district.  ECF No. 1 at 1.

Petitioner filed the instant § 2241 petition on March 17, 2026, in the Northern District of California, challenging his "ongoing, prolonged" detention without bond under the Due Process Clause of the Fifth Amendment and the Eighth Amendment.  ECF No. 1 at 2-13.  Petitioner explains that he has several children that depend on him for financial and emotional support, including an 18-year-old son with serious medical needs.  Id. at 4-5.  He seeks immediate release or, in the alternative, a bond hearing before an immigration judge ("IJ") where the government bears the burden of proving, by clear and convincing evidence, that he is a danger or flight risk.  Id. at 13.  The action was transferred to this district on April 28, 2026.  ECF No. 6.

Respondents oppose the petition on grounds petitioner is an "applicant for admission" subject to mandatory detention under 8 U.S.C. § 1225(b)(2).  ECF No. 10 at 1-2.  Respondents further argue that petitioner has no liberty interest because (1) immigration authorities never released him in their discretion, as each prior encounter resulted in his voluntary return to Mexico; and (2) ICE detained him most recently after an encounter with law enforcement.  ECF No. 10 at 3.  As a result, the Due Process Clause provides no more protection than what is afforded under § 1225(b)(2).  Id. at 2 (citing, inter alia, DHS v. Thuraissigiam, 591 U.S. 103, 138–40 (2020)).  In the event the Court awards relief, respondents ask that it be a bond hearing where petitioner bears the burden of proof, as opposed to petitioner's immediate release.  Id. at 3-4.

## II.    Legal Standards

### A.  Constitutional Standards

The Supreme Court has held that "the Due Process Clause applies to all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent."  Zadvydas v. Davis, 533 U.S. 678, 693 (2001).  The Due Process

2

Clause "protects individuals against two types of government action: violations of substantive due process and procedural due process." United States v. Quintero, 995 F.3d 1044, 1051 (9th Cir. 2021) (internal quotation omitted).  As a matter of substantive due process, governmental action may only infringe a fundamental right if "the infringement is narrowly tailored to serve a compelling state interest." Reno v. Flores, 507 U.S. 292, 302 (1993).

Courts examine procedural due process claims in two steps: the first step is determining whether there exists a protected liberty interest under the Due Process Clause.  The second step examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution.  See Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989); Morrissey v. Brewer, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").  In deciding what process is due to immigration detainees, the Ninth Circuit has assumed, without deciding, that the three-part test articulated in Mathews, 424 U.S. 319, applies.  See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206-07 (9th Cir. 2022).  Under Mathews, the court considers three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation of that interest; and (3) the government's interest involved including any fiscal or administrative burden that additional procedures would include.  Mathews, 424 U.S. at 335.

An as-applied challenge "contends that the law is unconstitutional as applied to the litigant's particular [circumstances], even though the law may be capable of valid application to others." Foti v. City of Menlo Park, 146 F.3d 629, 635 (9th Cir. 1998) (citation omitted).

### B.  Applicable Immigration Detention Statute

The statutory and regulatory framework governing immigration detention is complex. "Where a [noncitizen] falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." Prieto-Romero v. Clark, 534 F.3d 1053, 1057 (9th Cir. 2008).  The Supreme Court described the detention statutes at issue in this case, 8 U.S.C. § 1225 and 8 U.S.C. § 1226, in some detail in Jennings v. Rodriguez, 583 U.S. 281 (2018):

To implement its immigration policy, the Government must be able

to decide (1) who may enter the country and (2) who may stay here after entering.

That process of decision generally begins at the Nation's borders and ports of entry, where the Government must determine whether a[] [non-citizen] seeking to enter the country is admissible.  Under [] 8 U.S.C. § 1225, [a non-citizen] who 'arrives in the United States,' or 'is present' in this country but 'has not been admitted,' is treated as 'an applicant for admission.'  Applicants for admission must 'be inspected by immigration officers' to ensure that they may be admitted into the country consistent with U.S. immigration law.  § 1225(a)(3).

As relevant here, applicants for admission fall into one of two categories, those covered by § 1225(b)(1) and those covered by § 1225(b)(2).  Section 1225(b)(1) applies to [non-citizens] initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation. See §  1225(b)(1)(A)(i) (citing §§ 1182(a)(6)(C), (a)(7)).  Section 1225(b)(1) also applies to certain other [non-citizens] designated by the Attorney General in his discretion. See 8 U.S.C. § 1225(b)(1)(A)(iii). Section 1225(b)(2) is broader.  It serves as a catchall provision that applies to all applicants for admission not covered by § 1225(b)(1) (with specific exceptions not relevant here). See §§ 1225(b)(2)(A), (B).

Both § 1225(b)(1) and § 1225(b)(2) authorize the detention of certain [non-citizens]. [Non-citizens] covered by § 1225(b)(1) are normally ordered removed 'without further hearing or review' pursuant to an expedited removal process.  § 1225(b)(1)(A)(i).    But if a § 1225(b)(1) [non-citizen] 'indicates either an intention to apply for asylum ... or a fear of persecution,' then that [non-citizen] is referred for an asylum interview.  § 1225(b)(1)(A)(ii).  If an immigration officer determines after that interview that the [non-citizen] has a credible fear of persecution, 'the [non-citizen] shall be detained for further consideration of the application for asylum.' § 1225(b)(1)(B)(ii).  [Non-citizens] who are instead covered by § 1225(b)(2) are detained pursuant to a different process.  Those [non-citizens] 'shall be detained for a [removal] proceeding' if an immigration officer 'determines that [they are] not clearly and beyond a doubt entitled to be admitted' into the country.  8 U.S.C. § 1225(b)(2)(A).

….

Even once inside the United States, [non-citizens] do not have an absolute right to remain here.  For example, [a non-citizen] present in the country may still be removed if he or she falls 'within one or more ... classes of deportable [non-citizens].'  8 U.S.C. § 1227(a).  That includes [non-citizens] who were inadmissible at the time of entry or who have been convicted of certain criminal offenses since admission. See §§ 1227(a)(1), (2).

Section 1226 generally governs the process of arresting and detaining that group of [non-citizens] pending their removal.  Section 1226(a) sets out the default rule:  The Attorney General may issue a warrant

4

> for the arrest and detention of [a non-citizen] 'pending a decision on whether the [non-citizen] is to be removed from the United States.' § 1226(a).  'Except as provided in subsection (c) of this section,' the Attorney General 'may release' [a non-citizen] detained under § 1226(a) 'on ...bond' or 'conditional parole.'

Id. at 286-89 (footnote omitted).[2]

### III.    Analysis

Respondents' argument that petitioner is an "applicant for admission" subject to mandatory detention under 8 U.S.C. § 1225(b)(2) is based on the minority viewpoint in this Circuit.  See H.F. v. Albarran, No. 1:25-cv-1795 TLN EFB, 2025 WL 3691081, at *3 (E.D. Cal. Dec. 19, 2025); Salcedo Aceros v. Kaiser, No. 25-cv-6924 EMC, 2025 WL 2637503, at *8 (N.D. Cal. Sept. 12, 2025) (collecting cases).

> Courts in this Circuit have found that Section 1225 applies to those apprehended upon arrival to the United States while Section 1226 applies to those already living within the United States.  See, e.g., Bostock, 779 F. Supp. 3d at 1257 (finding petitioner likely to succeed on merits of argument that 1225(b)(2)(A) "should be read to narrow mandatory detention under that subsection to noncitizens who are apprehended while seeking to enter the country, and that noncitizens already residing in the United States, including those who are charged with inadmissibility, continue to fall under the discretionary detention scheme in Section 1226") (internal quotation marks omitted); J.A.C.P. v. Wofford, No. 1:25-cv-01354-KES-SKO-HC, 2025 WL 3013328, at *6–7 (E.D. Cal. Oct. 27, 2025).

E.L.D.M. v. Becerra, No. 1:25-cv-1906 DJC JDP, 2025 WL 3707140, at *3 (E.D. Cal. Dec. 22, 2025); see also Gutierrez v. Chesnut, No. 1:25-cv-1515 DAD AC (HC), 2025 WL 3514495, at *4 (E.D. Cal. Dec. 8, 2025) ("Numerous district courts have held that § 1226, rather than § 1225, applies to individuals who were physically present in the United States for some period of time before they were detained by ICE.").[3]  Further evidence that § 1226 governs here is the

---

[2]  The undersigned changed "alien" to "non-citizen" in these passages.  This has become commonplace among jurists at the Supreme Court and Ninth Circuit in recent years.  See Patel v. Garland, 596 U.S. 328 (2022) (Barrett, J.); United States v. Palomar-Santiago, 593 U.S. 321 (2021) (Sotomayor, J.); Barton v. Barr, 590 U.S. 222, 226 n.2, (2020) (Kavanaugh, J.) ("This opinion uses the term 'noncitizen' as equivalent to the statutory term 'alien.' " (citing 8 U.S.C. § 1101(a)(3))); Avilez v. Garland, 69 F.4th 525 (9th Cir. 2023); Arce v. United States, 899 F.3d 796 (9th Cir. 2018).

[3]  The undersigned also notes the increasing body of appellate case law outside the Ninth Circuit on this issue.  The undersigned declines to follow Buenrostro-Mendez v. Bondi, 166 F.4th 494

administrative warrant submitted by respondents shows ICE arrested petitioner pursuant to INA § 236, i.e., 8 U.S.C. § 1226(a). ECF No. 10-1 at 20. Accordingly, the undersigned concludes that the applicable statute governing petitioners' detention here is § 1226(a), and not § 1225(b)(2).

Having determined that petitioner is subject to the discretionary detention scheme in § 1226(a), the undersigned concludes that habeas relief is warranted on Petitioner's due process claim. Even assuming petitioner was not previously released at the discretion of immigration officials,[4] he has a general liberty interest in freedom from detention. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690. This liberty interest is particularly pronounced here given that petitioner's detention has now reached eight months. See Singh v. Holder, 638 F.3d 1196, 1208 (9th Cir. 2011) (an individual's private interest in "freedom from prolonged detention" is "unquestionably substantial.").[5] As for whether petitioner received adequate process, the undersigned easily concludes that respondents' failure to

(5th Cir. 2026), and Avila v. Bondi, 170 F.4th 1128 (8th Cir. 2026), for the reasons articulated in De La Paz Salazar, et al. v. Noem, No. 1:26-cv-0899 DC SCR, 2026 WL 915128, at *4 (E.D. Cal. Apr. 3, 2026). The undersigned instead finds persuasive the Second Circuit's extensive analysis in Cunha v. Freden, --- F.4th ---, 2026 WL 1146044 (2d Cir. Apr. 28, 2026). See also Hernandez Alvarez v. Warden, Federal Detention Ctr. Miami, --- F.4th ---, 2026 WL 1243395 (11th Cir. May 6, 2026) (holding that § 1226(a) governs detention of "unadmitted [non-citizens] found in the interior of the United States" and that such non-citizens "are eligible for bond while they go through immigration proceedings").

[4] The record is somewhat ambiguous on this point, as the denial of petitioner's Application for Provisional Unlawful Presence Waiver suggests that he did encounter immigration officials before his re-detention. See Quichimbo-Jimenez v. Warden, California City Corr. Ctr., No. 2:26-CV-00739-DAD-EFB, 2026 WL 679378, at *2 (E.D. Cal. Mar. 10, 2026) (finding similar evidence of USCIS applications "supports a finding that petitioner has previously been released by immigration authorities").

[5] By extension, the undersigned rejects respondents' argument, premised on Thuraissigiam, that petitioner lacks a liberty interest as an "applicant for admission." ECF No. 10 at 2-3. Thuraissigiam is materially distinguishable from this case for multiple reasons. First, its "discussion of due process is necessarily constrained to challenges to admissibility to the United States" and "[t]he Court answered no broader question." Padilla v. U.S. Immigr. & Customs Enf't, 704 F. Supp. 3d 1163, 1171-72 (W.D. Wash. 2023); see also Sadeqi v. LaRose, 809 F. Supp. 3d 1090, 1093 (S.D. Cal. 2025) (interpreting Thuraissigiam as "circumscribing an arriving alien's due process rights to admission, rather than limiting that person's ability to challenge detention.") (emphasis in original). Moreover, Thuraissigiam concerned an individual arrested mere yards from the border a short time after entering the United States without inspection, not an individual like petitioner who has established meaningful ties to the United States.

provide petitioner with any of § 1226(a)'s "substantial procedural protections," Rodriguez Diaz, 53 F.4th at 1193, including the right to request an initial custody re-determination before an IJ under 8 C.F.R. § 1236.1(d), violated procedural due process.  See Feng v. Lyons, No. 1:26-cv-0235 DJC SCR, 2026 WL 472635, at *1 (E.D. Cal. Feb. 19, 2026) (holding that the "lengthy [five-month] delay in providing the statutorily mandated bond hearing [under § 1226(a)] violates Petitioner's due process rights").

The undersigned next turns to the remedy.  If the Court awards relief, respondents maintain that it should be a bond hearing under § 1226(a) because he "may be a danger or flight risk" based on his recent convictions, including one for failure to appear.  ECF No. 10 at 3-4.  While respondents speculate now that petitioner may be a danger or flight risk, they detained him without bond for eight months not due to any exigent circumstances but on grounds he was an applicant for admission under § 1225(b)(2) and explicitly denied that he was detained under § 1226(a) or any other basis.  For this reason, the undersigned recommends that petitioner be granted immediate release.  See Valencia Cardenas v. Chestnut, No. 1:26-cv-2073 DAD SCR (HC), 2026 WL 785871, at *1 (E.D. Cal. Mar. 20, 2026) (finding immediate release to be appropriate remedy where respondents incorrectly detained petitioner under 8 U.S.C. § 1225(b)(2)) (citing Maciel v. Noem, No. 1:26-cv-1318 DC CKD, 2026 WL 496948 (E.D. Cal. Feb. 23, 2026)); Feng, 2026 WL 472635, at *1 (same).[6]  However, the undersigned agrees with respondents that they should be able to place petitioner on conditions of supervision upon his release.  ECF No. 10 at 3-4.

**CONCLUSION**

Accordingly, IT IS HEREBY RECOMMENDED that:

1.    Petitioner Jose Luis Rivas Garcia's (A# 204-734-331) application for a writ of habeas corpus be GRANTED as follows:

      a.    Respondents be ORDERED to immediately release petitioner from respondents' custody;

---

[6] In the interests of judicial economy, the undersigned will not address petitioner's Eighth Amendment claim.

     b.  Respondents may place petitioner on standard conditions of supervision upon release; and

     c.  Respondents be ENJOINED AND RESTRAINED from re-detaining petitioner without providing petitioner notice and a pre-detention hearing before an immigration judge pursuant to 8 U.S.C. § 1226(a).

2.     Any order adopting these findings and recommendations include language that it does not address the circumstances in which respondents may detain petitioner in the event petitioner becomes subject to an executable final order of removal and petitioner receives notice of that final order of removal.

3.     Petitioner's motion to appoint counsel (ECF No. 2) be DENIED as moot.

4.     The Clerk of the Court be directed to:

     a.  Service a copy of an ordering adopting these findings and recommendations on the Mesa Verde Detention Center; and

     b.  Enter judgment in petitioner's favor and close the case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **seven days** after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs.  See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: May 7, 2026

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE

8